# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CHRISTINA CASTIGLIONE,

    *Plaintiff,*

    v.

LONNIE G. BUNCH, III,

    *Defendant.*

Civil Action No. 23‑2274 (LLA)

## <u>MEMORANDUM OPINION</u>

Christina Castiglione brings this action against Lonnie G. Bunch, III, in his official capacity as Secretary of the Smithsonian Institution.  Ms. Castiglione alleges that her employer, the Smithsonian National Zoological Park, failed to accommodate her disability, discriminated against her, retaliated against her, and created a hostile work environment in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  Pending before the court is the Smithsonian's motion to dismiss.  ECF No. 15.  For the reasons explained below, the court will grant the motion and dismiss the case.

## I.     FACTUAL BACKGROUND

The following factual allegations drawn from Ms. Castiglione's amended complaint, ECF No. 13, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  The court further takes judicial notice of documents from the administrative proceedings that were attached to the briefing, *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (explaining that "[i]n employment discrimination cases, courts often take judicial notice of [Equal Employment

Opportunity Commission ("EEOC")] charges and EEOC decisions" in evaluating a motion to dismiss), and documents incorporated by reference into Ms. Castiglione's amended complaint, *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment.").

Ms. Castiglione began working as an animal keeper at the Zoo in 2012. ECF No. 13 ¶¶ 1, 20. She was hired to work on the American Trail exhibit with pinnipeds—more commonly known as seals. *Id.* ¶ 1. In May 2015, Ms. Castiglione was injured on the job after a seal bit her right ankle. *Id.* ¶ 21. As a result of her injury, Ms. Castiglione suffers from chronic pain, which substantially limits her ability to stand, lift, walk, and work. *Id.* ¶ 22. Following the incident, the Zoo issued Ms. Castiglione a Department of Labor ("DOL") Office of Workers' Compensation Programs ("OWCP") Duty Status Report (known as a "Form CA-17"), which listed the physical requirements for her position and allowed her to obtain workers' compensation benefits while she recovered. *Id.* ¶¶ 2, 25.

In July 2015, Ms. Castiglione underwent the first of several surgeries for her injury. *Id.* ¶ 24. After the surgery, she requested a reasonable accommodation that she only perform light-duty work. *Id.* ¶ 26. Her first-line supervisor, Lee Jackson, granted the request, and Ms. Castiglione returned to work on the American Trail in September 2015. *Id.* ¶ 27.

Ms. Castiglione had a second surgery in January 2016. *Id.* ¶ 28. She requested another reasonable accommodation, this time that she perform light-duty work on a part-time basis. *Id.* ¶ 29. Mr. Jackson and her other supervisors, Steve Sarro and Rick Quintero, approved the request, and Ms. Castiglione returned to work in April 2016. *Id.*; ECF No. 15-3 ¶ 12.

Ms. Castiglione had a third surgery in November 2016. ECF No. 15-3 ¶ 14. In March 2017, she asked to return to work with the reasonable accommodation that she work part-time. ECF No. 13 ¶ 31. This time, Mr. Quintero denied her request. *Id.* ¶ 32. The Human Resources Department thereafter notified Ms. Castiglione that "management was working on identifying a light duty assignment for her." *Id.* ¶ 34.

In late April 2017, DOL contacted Ms. Castiglione concerning her workers' compensation benefits. *Id.* ¶ 35. DOL advised her that the Zoo had available positions that fit her medical restrictions and inquired why she had not returned to work. *Id.* ¶ 35; ECF No. 15-3 ¶ 19. The Zoo provided a letter denying that suitable positions were available. ECF No. 13 ¶ 36. The Zoo also requested that Ms. Castiglione provide her resume to assist with its search for a position for her, which she did. *Id.* ¶¶ 37-38.

Ms. Castiglione was cleared to return to work with no restrictions on June 29, 2017, *id.* ¶ 39, but Senior Curator Ed Bronikowski would not let her return to work until July 12, *id.* ¶ 40. On her first day back, Ms. Castiglione learned that Mr. Bronikowski had reassigned her from the American Trail to the Amazonia Exhibit, even though she did not have experience working with the animals in the Amazonia Exhibit. *Id.* ¶¶ 41-42. Mr. Bronikowski also issued her two disciplinary memoranda. *Id.* ¶ 44. The first was a "Confirmation of Counseling" notice, dated March 6, 2017, stating that Ms. Castiglione had taken unauthorized photographs of Zoo animals in November and December 2016. *Id.* ¶ 45. Ms. Castiglione maintains that she had authorization from her supervisors to take the photographs. *Id.* ¶ 46. The second was a "Performance Counseling" notice, dated March 9, 2017, stating that she had failed to meet the standards of proper animal care on November 2, 2016. *Id.* ¶ 47. Ms. Castiglione contends that the error was "inadvertent" and that she had already been counseled about it. *Id.* ¶ 48; ECF No. 18-7, at 2.

Two weeks after she returned to work, Ms. Castiglione and her union representative met with Mr. Bronikowski to discuss her assignment away from the American Trail. ECF No. 13 ¶ 49. Ms. Castiglione asked Mr. Bronikowski to be able to split her time between the American Trail and the Amazonia Exhibit, but he refused. *Id.* ¶ 50. When Ms. Castiglione asked why she had been reassigned, Mr. Bronikowski replied, "Because I said so." *Id.* ¶ 51.

Nearly a year later, in April 2018, Ms. Castiglione applied for position on the American Trail. *Id.* ¶ 52. It was the same role she had previously been hired for in 2012, and the vacancy announcement specified experience with pinnipeds—her area of expertise. *Id.* Ms. Castiglione then took leave for another surgery, but she interviewed for the position in July while on leave. *Id.* ¶¶ 53-54. In August, Ms. Castiglione learned that her first-line supervisor, Rachel Metz, had hired a candidate with less than two years of experience working with pinnipeds for the position. *Id.* ¶¶ 56-57.

In August 2018, Ms. Castiglione requested that she be allowed to return to work on a part-time basis. *Id.* ¶ 60. Mr. Bronikowski rejected her request and refused to allow her to return to work until she was cleared to work without limitations. *Id.* ¶ 61. His stated reason was "to maintain staff and animal safety while also maintaining consistency between units at the zoo." ECF No. 18-7, at 3.

In January 2019, Ms. Castiglione went on leave for her fifth and final surgery. *Id.* ¶ 62. On May 3, Ms. Metz sent her a Notice of Proposed Separation for medical reasons. *Id.* ¶ 63. Ms. Metz had not reached out to Ms. Castiglione to check on her progress before issuing the notice. *Id.* ¶ 65. On May 31, Ms. Castiglione responded to the notice, explaining that she had been medically cleared to return to work part-time as of May 22 and that she expected to be able to

return to work full-time in July. *Id.* ¶ 70. Ms. Metz thereafter rescinded the notice of proposed removal. *Id.* ¶ 73.

On July 11, 2019, Ms. Castiglione informed Ms. Metz that she had been cleared to return to work with no restrictions and that she was interested in an open position on the American Trail, to which she later applied. *Id.* ¶¶ 75-76, 83. Ms. Metz told her to report to work on July 22. *Id.* ¶ 77. When Ms. Castiglione inquired about the delay and whether it would affect her pay, she was informed that she would continue to receive workers' compensation benefits through July 20, which amounted to two-thirds of her wages. *Id.* ¶¶ 78-79.

Ms. Metz provided Ms. Castiglione with her new work schedule, which changed her day off from every other Monday to every other Wednesday. *Id.* ¶¶ 81-82. After she returned to work, Ms. Castiglione met with Ms. Metz to discuss her work schedule. *Id.* ¶ 84. Ms. Metz stated that Ms. Castiglione's request to return to her old schedule had "upset the team," that people had commented that she sounded "depressed" when she answered the phone, and that she would never return to the American Trail. *Id.* ¶¶ 85-88. Ms. Castiglione understood the last statement to mean that her application for the American Trail vacancy had been rejected. *Id.* ¶ 89.

In early August 2019, Ms. Metz twice assigned Ms. Castiglione to work the closing shift without giving her the two weeks' advance notice required under her union agreement. *Id.* ¶¶ 90-93. Previously, Ms. Castiglione and her coworkers would decide amongst themselves who would work the closing shifts. *Id.* ¶ 92.

One of Ms. Castiglione's major responsibilities with the Amazonia Exhibit was to submit weekly orders for the animals' food. *Id.* ¶ 97. Since August 2021, Ms. Castiglione has copied Mr. Quintero and other Zoo staff on the orders. *Id.* ¶ 98. Between October 2022 and

February 2023, Ms. Castiglione included ten heads of romaine lettuce in her weekly food orders without anyone raising concerns.  *Id.* ¶ 99.

On February 22, 2023, Ms. Castiglione emailed her employment attorney and accidentally copied two of the Smithsonian's attorneys.  *Id.* ¶ 101; ECF No. 15-1.  Later that day, Mr. Quintero admonished her for ordering too much lettuce and instructed her to stop ordering extra vegetables. ECF No. 13 ¶ 102.  In compliance with Mr. Quintero's instructions, Ms. Castiglione ordered seven heads of lettuce in her next order, placed in late February, and she began photographing the food that she prepared for the animals.  *Id.* ¶ 104.  Yet, the following week, Mr. Quintero took the responsibility of placing food orders away from Ms. Castiglione.  *Id.* ¶ 105.  In April, he issued her a letter of reprimand for "failure to adhere to Zoo Directive (ZD) 570—Biosecurity of the Animal Food Supply policy," stating that she had been "ordering too much food beyond what was approved for the unit."  *Id.* ¶ 106; ECF No. 15-2, at 1.  Ms. Castiglione asserts that Mr. Quintero did not discipline other employees whom he knew had violated feeding protocols.  ECF No. 13 ¶ 107.

## II.    PROCEDURAL HISTORY

Ms. Castiglione first contacted a Smithsonian Equal Employment Opportunity ("EEO") counselor on June 20, 2019, alleging discrimination and retaliation, and she filed a formal complaint on August 20.  ECF No. 15-3 (informal complaint), ECF No. 18-2 (formal complaint); *see* 29 C.F.R. § 1614.105(a) (setting forth the process for an informal complaint); 29 C.F.R. § 1614.106 (setting forth the process for a formal complaint).  The Smithsonian accepted her formal complaint as raising claims of hostile work environment and retaliation.  ECF No. 18-3, at 1.  The agency issued a final decision finding against Ms. Castiglione on December 23, 2021. ECF No. 13 ¶ 16; ECF No. 18-7.  She appealed the decision to the EEOC's Office of Federal

Operations, which affirmed on May 9, 2023.  ECF No. 13 ¶ 17; ECF No. 18-8.  Ms. Castiglione then filed this suit on August 7, 2023.  ECF No. 1.

In the meantime, on May 3, 2023, Ms. Castiglione reached out to a Smithsonian EEO counselor about a second set of claims of discrimination and retaliation, and she filed a formal complaint on June 12, 2023.  ECF No. 15-4 (informal complaint); ECF No. 15-5 (formal complaint).  The Smithsonian accepted her formal complaint as raising claims of disability discrimination and retaliation. ECF No. 19-1, at 1; ECF No. 18-11, at 1.  The agency issued a final decision finding against Ms. Castiglione on February 19, 2024.  ECF No. 13 ¶ 19; ECF No. 19-2.  On March 15, 2024, Ms. Castiglione amended her complaint in this case to include claims related to her second EEO complaint.  ECF No. 13.

In her amended complaint, Ms. Castiglione alleges that the Smithsonian failed to accommodate her disability (Count I), discriminated against her on the basis of her disability (Counts II, IV, VI, VIII, X, and XII), retaliated against her for engaging in protected activity (Counts III, V, VII, XI, and XIII), and subjected her to a hostile work environment (Count IX), all in violation of the Rehabilitation Act.  ECF No. 13 ¶¶ 108-65.  As relief, Ms. Castiglione seeks a position on the American Trail, lost wages and benefits, $300,000 in compensatory damages, pre- and post-judgment interest, and attorney's fees and costs.  *Id.* at 16-17.  The Smithsonian has filed a motion to dismiss, ECF No. 15, and the matter is fully briefed, ECF Nos. 15, 18, 19.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). While a plaintiff need not establish a prima facie case of discrimination at the pleading stage, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002), she must allege sufficient facts beyond mere legal conclusions to allow the court to draw a reasonable inference of discrimination from the complaint. "If [the] plaintiff fails to plead 'sufficient factual matter' to state a discrimination claim that is 'plausible on its face,' then the district court should dismiss the case before discovery." *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015)).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)). The court will therefore consider emails that are referenced in Ms. Castiglione's complaint, ECF No. 13 ¶ 100-01 (referencing ECF No. 15-1); *id.* ¶ 106 (referencing ECF No. 15-2); and take judicial notice of Ms. Castiglione's EEO materials

without converting the Smithsonian's motion to dismiss into one for summary judgment.  *Golden*, 319 F. Supp. 3d at 366 n.2.[1]

## IV.    DISCUSSION

Ms. Castiglione alleges that the Smithsonian violated the Rehabilitation Act by failing to accommodate her disability, discriminating against her on the basis of her disability, retaliating against her for engaging in protected activity, and creating a hostile work environment.  *See generally* ECF No. 13.  The Smithsonian argues that she failed to timely exhaust several of her claims, ECF No. 15, at 7-11, and that she fails to state a claim on which relief can be granted for others, *id.* at 11-29.  The court concludes that Ms. Castiglione failed to exhaust her administrative remedies with respect to Counts I-III and X-XI, as well as certain events that relate to other counts, and that she failed to state a claim on the remaining counts.

### A.    Exhaustion

A plaintiff may not initiate a civil action under the Rehabilitation Act until she has exhausted her administrative remedies for each discrete discriminatory or retaliatory act.  *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015).  Exhaustion allows federal agencies "to handle matters internally whenever possible."  *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).  The exhaustion process begins when a federal employee "initiate[s] contact" with her agency's EEO counselor, which must be done within forty-five days of the alleged discriminatory or retaliatory act.  29 C.F.R. § 1614.105(a)(1).  "Each discrete discriminatory act starts a new clock for filing

---

[1] Ms. Castiglione takes issue with two cover emails to which EEO documents were attached, ECF No. 18, at 5 (referencing the cover emails for ECF No. 15-3 and 15-5), and an email chain in which her counsel answers questions relating to her 2023 EEO claim, *id.* (referencing ECF No. 15-6). The court can consider these without converting the Smithsonian's motion to dismiss into one for summary judgment because these exhibits relate to her EEO proceedings.

charges alleging that act"—meaning that any claim arising out of an act not raised with an EEO counselor within forty-five days cannot be pursued. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The forty-five-day rule differs slightly in the context of hostile work environment claims, which "are different in kind from discrete acts." *Id.* at 115. By nature, hostile work environment claims "involve[] repeated conduct" and "therefore cannot be said to occur on any particular day"; rather, they "occur[] over a series of days or perhaps years." *Id.* Accordingly, a hostile work environment claim is timely "[p]rovided that an act contributing to the claim occurs within the filing period." *Id.* at 117. But the act must be one that "contribut[es] to the claim," *id.*—that is, the untimely and timely actions must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts," *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

If the employee's grievance is not resolved through informal counseling, the employee may file a formal complaint, which the agency investigates and adjudicates. 29 C.F.R. § 1614.106. The issues raised in the formal administrative complaint are the ones that may be addressed in later court proceedings. *See Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 44 (D.D.C. 2022). "A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). After a formal complaint is filed, the agency has 180 days to investigate (or 360 days in the event of an amendment). *Id.* §§ 1614.106(e)(2), 1614.108(e) & (f). If the agency does not timely provide a final decision by the relevant deadline, the employee may file suit in federal court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b); *see In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006).

The failure to exhaust administrative remedies is an affirmative defense, which means that the agency bears the burden to plead and prove the plaintiff's failure to exhaust. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).[2]  The Smithsonian argues that Counts I-III and X-XI must be dismissed because Ms. Castiglione failed to exhaust her administrative remedies.  ECF No. 15, at 7-11.  It further contends that Ms. Castiglione may not rely on certain events in support of her other discrete claims of discrimination or retaliation due to her failure to exhaust.  *Id.* at 11. The court agrees.

Ms. Castiglione first contacted an EEO counselor on June 20, 2019 and then again on May 3, 2023.  ECF Nos. 15-3, 15-4.  This means that any discrete acts of discrimination or retaliation that occurred outside the forty-five-day windows preceding those dates—before May 6, 2019 and before March 19, 2023, respectively—are untimely for exhaustion purposes. The court will consider Ms. Castiglione's claims in three batches: the Smithsonian's refusal to let her return to work (Counts I-III), its refusal to let her work on the American Trail (Counts X and XI), and discrete events concerning the other counts.

*Return to work.*  Counts I-III center on Ms. Castiglione's allegations that the Smithsonian denied her reasonable accommodations, discriminated against her, and retaliated against her from March 2017 through July 2019 when it denied her requests to work with restrictions until she could return to full-time, full-duty status.  ECF No. 18, at 2; ECF No. 18-2.  The majority of these allegations—those about the denial of her request to work part-time in March 2017, which prevented her from returning to work until July 2017; the denial of her request to work part-time in August 2018, which prevented her from returning to work before her January 2019 surgery; and

---

[2] In certain circumstances not applicable here, the failure to exhaust administrative remedies under the Rehabilitation Act is jurisdictional.  *See Bain*, 648 F. Supp. 3d at 46.

her May 3, 2019 proposed notice of removal—concern events that occurred before May 6, 2019, and are thus not administratively exhausted.

The Smithsonian argues that Counts I-III are also unexhausted as they pertain to Ms. Castiglione's statements that she could return to work part-time beginning on May 31, 2019, because, although this allegation is within the forty-five-day window preceding her June 20, 2019 informal EEO complaint, she was not making a request for a reasonable accommodation or to return to work but was instead responding to the proposed notice of removal.  ECF No. 15, at 9-10.  Ms. Castiglione fails to respond to this argument, thereby conceding the point.  *See Day v. D.C. Dep't of Consumer & Regul. Affs.*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").  Accordingly, the court will dismiss Counts I-III for failure to exhaust.[3]

*American Trail.*  The Smithsonian contends that some of Ms. Castiglione's claims concerning the Zoo's refusal to let her work on the American Trail (Counts X and XI) are similarly unexhausted because they were not brought within forty-five days of her May 3, 2023 informal EEO complaint.  Ms. Castiglione alleges that she was not selected for three American Trail positions: (1) one posted in April 2018 that was filled by November 2018; (2) one posted in July 2019 that was filled later that month; and (3) one posted in October 2022 that was filled in January 2023.  ECF No. 15-6, at 1.  Each of these selection decisions was made well before March 19, 2023—forty-five days before Ms. Castiglione's May 3, 2023 informal EEO complaint—and Ms. Castiglione does not argue that she learned of her non-selection in the

---

[3] Ms. Castiglione argues that these claims are timely exhausted because the Smithsonian engaged in "continuing violation[s]."  ECF No. 18, at 6.  That argument runs afoul of *Morgan*, which requires exhaustion for each discrete act of discrimination or retaliation.  536 U.S. at 114.

forty-five-day period between March 19, 2023 and May 3, 2023.  Accordingly, the court will dismiss Counts X and XI for failure to exhaust.[4]

    *Discrete events*.  The Smithsonian argues that Ms. Castiglione's complaint contains several additional allegations that were not properly exhausted and cannot form the basis of discrete discrimination and retaliation claims.  ECF No. 15, at 11.  Specifically, it takes issue with Ms. Castiglione's allegations that:

- Mr. Bronkowski reassigned Ms. Castiglione from the American Trail to the Amazonia Exhibit in July 2017;

- Mr. Bronkowski issued Ms. Castiglione two disciplinary citations in July 2017;

- The Zoo did not select Ms. Castiglione for a vacancy on the American Trail in August 2018; and

- The Zoo issued Ms. Castiglione a Notice of Proposed Removal due to medical reasons on May 3, 2019.

*Id.*  In response, Ms. Castiglione does not argue that her allegations concerning these events are actionable.  Instead, she explains that she "provide[d] this information for context and as evidence of discriminatory and retaliatory animus."  ECF No. 18, at 7.  Because the parties agree that these events are not administratively exhausted, the court will consider them only as background information in support of her discrete discrimination and retaliation claims and as part of her hostile work environment claims.  *Morgan*, 536 U.S. at 113 (explaining that the court may consider untimely events as "background evidence in support of a timely claim"); *id.* at 115 (hostile work environment).

---

[4] The Smithsonian further argues that Ms. Castiglione may not rely on these non-selection decisions as the basis of any discrete discrimination or retaliation claim because she did not timely exhaust. ECF No. 15, at 15; ECF No. 19, at 7.  The court agrees.  *See Morgan*, 536 U.S. at 113-14.

### B.    Discrimination

In relevant part, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of . . . [her] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a).   A plaintiff bringing a discrimination claim under the Rehabilitation Act must allege that she is disabled or perceived to be disabled, that she suffered an adverse employment action, and that a causal connection exists between her disability and the adverse employment action.  *Doak v. Johnson*, 19 F. Supp. 3d 259, 271 (D.D.C. 2014), *aff'd*, 798 F.3d 1096 (D.C. Cir. 2015).   The parties do not dispute the first prong—disability or perceived disability—so the court will focus on the last two.

Ms. Castiglione bases her discrimination claims on Ms. Metz's decisions to change her day off in July 2019 and schedule her for closing shifts in August 2019, ECF No. 13 ¶¶ 81-82, 90-93, 122-26 (Count IV), Ms. Metz's comments to Ms. Castiglione during that same time period, including that she sounded "depressed" and that she was "never going back to American Trail," *id.* ¶¶ 86-87, 132-36 (Count VI),[5] and the April 2023 letter of reprimand about her food orders, *id.* ¶¶ 97-107, 158-61 (Count XII).   The Smithsonian argues that none of these events qualify as adverse actions, ECF No. 15, at 11-16, and that Ms. Castiglione has failed to sufficiently allege a causal connection between her disability and the alleged adverse actions, *id.* at 16-18.   The court concludes that Ms. Castiglione has alleged that she suffered adverse actions, but that she comes up short on causation.

---

[5] As previously explained, Ms. Castiglione has not exhausted her claims as they concern her non-selection for positions on the American Trail.  *See supra* Part IV.A.

1.    Adverse Action

The Supreme Court recently clarified the standard for an actionable adverse employment action in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).  There, the Court explained that a plaintiff must simply allege "some harm" regarding the terms or conditions of her employment to support a discrimination claim.   *Id.* at 350.   That holding is largely consistent with the D.C. Circuit's decision in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), in which the Circuit held that a plaintiff need only show some change with respect to the terms and conditions of her employment (as opposed to an "objectively tangible harm") to plead an adverse action.[6]  35 F.4th at 874-75.  And while *Muldrow* and *Chambers* concerned Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, *see* 601 U.S. at 346; 35 F.4th at 870, courts in this Circuit have "long interpreted" Title VII and the Rehabilitation Act in parallel, *Bain*, 648 F. Supp. 3d at 51.

The adverse actions that Ms. Castiglione alleges—the changes to her work schedule in July and August 2019, Ms. Metz's comments in July 2019, and the letter of reprimand in April 2023—meet the standard of "some harm" to the terms and conditions of her employment under *Muldrow*, because they represent changes that negatively impact her work environment.   ECF No. 13 ¶¶ 81-93, 105-107; *see Muldrow*, 601 U.S. at 977.   Giving Ms. Castiglione the benefit of all reasonable inferences, as this court must when evaluating the Smithsonian's motion to dismiss, *see Iqbal*, 556 U.S. at 678, the court concludes that she has sufficiently alleged adverse actions that affected the terms and conditions of her employment.

---

[6] *See Muldrow*, 601 U.S. at 364-65 (Kavanaugh, J., concurring) ("As I see it and as the D.C. Circuit saw it [in *Chambers*]," "[t]he discrimination is harm.  The only question then is whether the relevant employment action changes the compensation, terms, conditions, or privileges of employment. . . . I expect that the [majority]'s approach and my preferred approach will land in the same place and lead to the same result[.]").

2.    Causal Connection

Ms. Castiglione must also show a causal connection between her protected status and the alleged adverse actions.  *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  One way that a plaintiff can satisfy this burden is "by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'"  *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). While the burden is "not onerous" at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator.  *SS & T, LLC v. Am. Univ.*, No. 19-CV-721, 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)).  "A plaintiff's assertion that [she] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough."  *Id.* at *5 (second alteration in original) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)); *see Keith v. U.S. Gov't Accountability Off.*, No. 21-CV-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (granting a motion to dismiss for failure to state a claim and reasoning that "to plausibly plead the causation element [through similarly situated comparators], [the plaintiff] must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees").

Ms. Castiglione does not sufficiently allege that similarly situated employees who did not have a disability were treated more favorably, nor does she allege any other facts that would support a reasonable inference of discrimination.  To the contrary, the amended complaint rests on conclusory statements of the legal standard that the court need not credit.  *Iqbal*, 556 U.S. at 678. With regard to her scheduling changes, Ms. Castiglione points to no similarly situated comparator who received their preferred day off after coming back from non-disability leave or who was not

16

assigned to work closing shifts.[7]    And while she vaguely contends that the Smithsonian "continue[d] to select less-qualified candidates" without disabilities for positions on the American Trail, ECF No. 13 ¶ 95, and that "other employees" violated feeding protocols without being reprimanded, *id.* ¶ 107, she fails to allege any facts about the identity or other characteristics of any alleged comparator.  Courts have routinely concluded that such bare assertions are insufficient to survive a motion to dismiss.  *See, e.g.*, *SS & T, LLC*, 2020 WL 1170288, at *4 ("SS & T cannot merely allege that similarly situated leaseholders not owned by persons of Indian-descent were treated differently and then offer 'nothing more in the way of specific facts or allegations associated with this claim.'" (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 239 (D.D.C. 2007))).  Without more, Ms. Castiglione's allegations of a causal connection between her disability and any adverse employment action are too threadbare to survive the Smithsonian's motion to dismiss.  Therefore, the court will dismiss Counts VI, IV, and XII.[8]

## C.    Retaliation

To allege retaliation in violation of the Rehabilitation Act, the plaintiff must show that she (1) engaged in statutorily protected activity; (2) suffered a materially adverse action by her employer; and (3) there is a but-for causal link between the two.  *Congress v. Gruenberg*, 643 F. Supp. 3d 203, 229 (D.D.C. 2022); *see Baloch*, 550 F.3d at 1196.  While the *Chambers* and *Muldrow* Courts changed the adverse-action standard for discrimination claims, both Courts

---

[7] Ms. Castiglione alleges that during her previous stints with the Amazonia Exhibit, the "team would discuss who would work late shifts" rather than being directly assigned, ECF No. 13 ¶ 92, but she does not allege that such a policy was still in place when Ms. Metz assigned her to work two closing shifts in August 2019.

[8] Ms. Castiglione argues that she can allege the requisite causal connection by virtue of the temporal proximity between her allegations, ECF No. 18, at 10-11, but temporal proximity is a way of alleging a causal connection for retaliation, not discrimination, *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).

clarified that the threshold did not change for retaliation claims, and thus the "materially adverse" standard remains. *Chambers*, 35 F.4th at 877; *Muldrow*, 601 U.S. at 357-58.

Much like her discrimination claims, Ms. Castiglione bases her retaliation claims on changes to her schedule, ECF No. 13 ¶¶ 127-31 (Count V), Ms. Metz's comments, *id.* ¶¶ 137-41 (Count VII), and the April 2023 letter of reprimand, *id.* ¶¶ 162-65 (Count XIII). The Smithsonian argues that she has not sufficiently alleged materially adverse actions or causation. ECF No. 15, at 18-23. The court concludes that the April 2023 letter of reprimand constitutes a materially adverse action, but that Ms. Castiglione cannot establish causation.

1.    Materially Adverse Action

While the court earlier concluded that the changes to Ms. Castiglione's work schedule and Ms. Metz's comments were sufficient adverse actions for purposes of a discrimination claim, *see supra* Part IV.B.1, the court cannot conclude that these actions were *materially* adverse for purposes of a retaliation claim. *See Mitchell v. Garland*, No. 23-CV-2412, 2024 WL 3251217, at *6 (D.D.C. Jul. 1, 2024) (holding that a change in work schedule was not materially adverse); *Achgazai v. Broad. Bd. of Governors*, No. 17-CV-612, 2018 WL 4705799, at *7 (D.D.C. Sep. 30, 2018) (similar); *Brokenborough v. District of Columbia*, 236 F. Supp. 3d 41, 59 (D.D.C. 2017) (holding that "single incidents of verbal taunts and mocking" were not materially adverse actions). It is true that, in some cases, a schedule change can constitute materially adverse action, but materiality depends on context. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."). Such context is sorely lacking here, where Ms. Castiglione does not even allege that her new schedule was

18

unfavorable, let alone explain why.[9]  *Mitchell*, 2024 WL 3251217, at *6.  Because there is no reason to believe that the complained-of actions would "dissuade[] a reasonable worker from making or supporting a charge of discrimination," they are not materially adverse.  *Mogenham v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).  The court will therefore dismiss Counts V and VII.

The same cannot be said for the April 2023 letter of reprimand.  ECF No. 15-2.  In the letter, Mr. Quintero explains that he had relieved Ms. Castiglione of the responsibility of placing weekly food orders for the Amazonia Exhibit.  *Id.* at 1.  He further states that the memo is "effective immediately" and that a copy would be retained in Ms. Castiglione's personnel file for one year.  *Id.*  "Formal letters of reprimand may well, under certain circumstances, dissuade a reasonable worker from pursuing a discrimination claim."  *Powell v. Lockhart*, 629 F. Supp. 2d 23, 40 (D.D.C. 2009).  These circumstances include whether a letter of reprimand will remain in the plaintiff's personnel file for a period of time, which could "add[] a level of severity to any future discipline that might occur in that time frame," *Walker v. Johnson*, 501 F. Supp. 2d 156, 173 (D.D.C. 2007), and whether the reprimand is accompanied by a change in responsibilities, *see Saunders v. Mills*, 842 F. Supp. 2d 284, 293 (D.D.C. 2012) (holding that "diminished responsibilities constituted a material change in her employment" sufficient to support a claim of retaliation).  Because those circumstances are present here, the court finds that the letter of reprimand constitutes a materially adverse action.

---

[9] In her opposition to the Smithsonian's motion to dismiss, Ms. Castiglione argues that her new schedule was unfavorable.  ECF No. 18, at 8-9 (claiming that the new schedule prevented her from "spending time with her long-term boyfriend").  The court cannot consider this assertion because "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

2.      Causal Connection

The Smithsonian argues that Ms. Castiglione has failed to allege a sufficient causal connection between the April 2023 letter of reprimand and her protected activities.  ECF No. 15, at 21-23.  The court agrees.  In her amended complaint, Ms. Castiglione fails to specify what protected activity she engaged in that resulted in the alleged adverse action.  *See generally* ECF No. 13.  If, as she suggests in her opposition, ECF No. 18, at 13, she is claiming that she received the letter of reprimand because she inadvertently copied Smithsonian lawyers on an email to her employment lawyer, thereby alerting them that she was pursuing a discrimination claim, she has failed to allege that *Mr. Quintero* was aware of that email when he issued the letter.  *See Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 50 (D.D.C. 2003) (requiring a plaintiff to show that "the employer was aware of the [statutorily protected] activity" (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973))).  The court will therefore dismiss Count VIII.

D.      **Hostile Work Environment**

To survive a motion to dismiss a hostile work environment claim, the plaintiff must sufficiently allege that her "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  "[A] few isolated incidents of offensive conduct do not amount to actionable harassment."  *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  The incidents must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts."  *Baird*, 662 F.3d at 1252.  In determining whether a plaintiff can proceed with a hostile work environment claim, the court "looks to the totality of the circumstances, including the frequency of the

discriminatory [or retaliatory] conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (quoting *Baloch*, 550 F.3d at 1201).

Ms. Castiglione asserts that she has been subject to a "hostile work environment every day for nearly seven years, since Defendant removed her from the American Trail without explanation." ECF No. 18, at 15. The court will thus consider all of her allegations—exhausted and unexhausted, *see Morgan*, 536 U.S. at 115—to determine whether she has stated a claim for hostile work environment. These allegations include: the denial of her accommodation request in March 2017 and resulting delay in her return to work; her reassignment away from the American Trail in July 2017; the disciplinary citations she received in July 2017; the denial of her accommodation request in August 2018 and resulting delay in her return to work; the proposed notice of removal in May 2019; her non-selection for American Trail positions posted in April 2018, July 2019, and October 2022; the changes in her work schedule in July and August 2019; Ms. Metz's comments in July 2019; and Mr. Quintero's oral and written reprimands concerning the animals' food orders and concomitant change in her job duties. ECF No. 13 ¶¶ 31-48, 52-57, 60-61, 63, 75-91, 98-107.

The Smithsonian argues that Ms. Castiglione's allegations reflect a collection of discrete actions taken by a variety of supervisors over several years and are "too dissimilar and too sporadic to properly group together into a single hostile work environment claim." ECF No. 15, at 26. It further contends that, even taken together, the actions were not sufficiently severe or pervasive to constitute a hostile work environment. *Id.* at 28-29. The court again agrees with the Smithsonian.

"[I]t is well-established that 'this jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of [discrimination or] retaliation into a broader hostile work environment

claim.'"  *Mason v. Geithner*, 811 F. Supp. 2d 128, 177 (D.D.C. 2011) (quoting *Baloch*, 517 F. Supp. 2d at 364).   In assessing whether "a variety of component [] acts can be considered collectively," the court considers "the extent to which the alleged actions are related in time and type." *Id.* at 178.  Here, there is no "common thread" between Ms. Castiglione's allegations, *id.*— some concern her inability to work on the American Trail, others concern her schedule, and yet others concern disciplinary infractions.  Her allegations thus reflect the type of bootstrapping this court disfavors.  *Id.*

But even if Ms. Castiglione's allegations could be grouped together, Ms. Castiglione has failed to meet the "high bar" for a hostile work environment claim because she does not allege severe or pervasive conduct.  *Joyner v. Morrison & Foerster LLP*, No. 20-CV-1440, 2023 WL 6313194, at *7 (D.D.C. Sept. 27, 2023), *appeal filed*, No. 23-CV-7142 (D.C. Cir. Oct. 27, 2023). Instances of sufficiently severe or pervasive conduct have included yelling offensive racial epithets, *see Ayissi-Etoh*, 712 F.3d at 577, and forcing an employee to work in an unheated storage room for over a year, *see Singletary v. District of Columbia*, 351 F.3d 519, 528 (D.C. Cir. 2003) (reversing the denial of summary judgment on the plaintiff's hostile work environment claim and remanding).  Ms. Castiglione's allegations are different in kind from these examples.  Instead, her allegations are more akin to *Nurriddin v. Bolden*, where the court found that the plaintiff's allegations about being denied requests for promotions, transfers, and detail opportunities, receiving unfair reprimands, and having certain duties removed fell short of the standard for a hostile work environment.  674 F. Supp. 2d 64, 93-95 (D.D.C. 2009); *see Laughlin v. Holder*, 923 F. Supp. 2d 204, 221 (D.D.C. 2013) (dismissing hostile work environment claim because "the non-promotion[] and other performance-based actions alleged [did not] rise to the level of an actionable

hostile work environment"). Accordingly, the court will dismiss Ms. Castiglione's hostile work environment claims (Counts VIII-IX).

## V.    CONCLUSION

For the foregoing reasons, the court will grant the Smithsonian's Motion to Dismiss, ECF No. 15. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date: March 18, 2025